ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/10/2025 4:41 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-24-00114-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/10/2025 4:41:43 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS FOR THE
FIFTEENTH DISTRICT OF TEXAS

Cecile E. Young, in her official capacity as Executive Commissioner of Texas Health & Human Services Commission, Molina Healthcare of Texas, Inc., and Aetna Better Health of Texas, Inc.,

*Appellants,*

v.

Cook Children's Health Plan, Texas Children's Health Plan, Superior HealthPlan, Inc., and Wellpoint Insurance Company,

*Appellees.*

Appeal from the 455th Judicial District Court, Travis County, Texas, Trial Court Cause No. D-1-GN-24-003839, Hon. Laurie Eiserloh, Presiding

### APPELLEE SUPERIOR HEALTHPLAN, INC.'S MOTION FOR TEMPORARY RELIEF UNDER RULE 29.3

Karen D. Walker
*Pro Hac Vice Motion Pending*
karen.walker@hklaw.com
Tiffany Roddenberry
*Pro Hac Vice Motion Pending*
tiffany.roddenberry@hklaw.com

HOLLAND & KNIGHT LLP
315 S. Calhoun Street, Suite 600
Tallahassee, Florida 32301
(850) 425-5612 (telephone)
(850) 224-8832 (facsimile)

Richard B. Phillips, Jr.
Texas Bar No. 24032833
rich.phillips@hklaw.com

HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 15500
Dallas, Texas 75201
(214) 964-9500 (telephone)
(214) 964-9501 (facsimile)

**Counsel for Appellee Superior HealthPlan, Inc.**

# TABLE OF CONTENTS

Page

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual and Procedural Background . . . . . . . . . . . . . . . . . . . . 5

    1.   HHSC's RFP . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    2.   The Intended Contract Awards and the Resulting
        Disruption of Healthcare for More than 1.5 Million
        Vulnerable Texans . . . . . . . . . . . . . . . . . . . . . . 8

    3.   HHSC's Wrongful Disclosure . . . . . . . . . . . . . . . . . 9

    4.   The Executive Commissioner Is Poised to Further Her
        Unlawful Conduct through Administration of the STAR
        Kids RFP . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    5.   The Executive Commissioner's *Ultra Vires* Actions . . . . . . . . . . . . 13

    6.   The Trial Court's Temporary Injunction . . . . . . . . . . . . . . . . . 19

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    1.   This Court has authority to enjoin further action by the
        Executive Commissioner pending resolution of this appeal.. . . . . . . . 23

    2.   The Court should reinstate the trial court's injunction
        pending resolution of this appeal.. . . . . . . . . . . . . . . . . . . . 25

        A.   The trial court correctly found that Appellees established
            a probable right to relief. . . . . . . . . . . . . . . . . . . . 25

B. A temporary order is necessary to prevent irreparable
harm to Superior. . . . . . . . . . . . . . . . . . . . . . . . 27

C. Without a temporary order, Superior's claims could be
rendered moot.. . . . . . . . . . . . . . . . . . . . . . . . . 29

D. A temporary order will preserve the status quo pending
appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . 33

Certificate of Conference . . . . . . . . . . . . . . . . . . . . . 35

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . 35

# Index of Authorities

Page

## Cases

*Benavides Indep. Sch. Dist. v. Guerra*,
681 S.W.2d 246 (Tex. App.—San Antonio 1984,
writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re Abbott*,
645 S.W.3d 276 (Tex. 2022). . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Geomet Recycling LLC*,
578 S.W.3d 82 (Tex. 2019) (orig. proceeding). . . . . . . . . . . . . . . *passim*

*In re Newton*,
146 S.W.3d 648 (Tex. 2004) (orig. proceeding) . . . . . . . . . . . . . . 31

*In re State*,
711 S.W.3d 641 (Tex. 2024) . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*In re Tex. Educ. Agency*,
619 S.W.3d 679 (Tex. 2021) (orig. proceeding) . . . . . . . . . . . . 23, 30

*Tex. Educ. Agency v. A+ Texas Teachers*,
No. 03-23-00318-CV, 2023 WL 4981604 (Tex. App.—Austin
Aug. 4, 2023, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tex. Educ. Agency v. Houston Indep. Sch. Dist.*,
609 S.W.3d 569 (Tex. App.—Austin 2020, no pet.) . . . . . . . . . . . 24, 29

*Tex. Health & Human Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*,
No. 03-21-00136-CV, 2021 WL 2371356 (Tex. App.—Austin
June 9, 2021, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 32

*Tex. State Bd. of Examiners in Optometry v. Lane*,
349 S.W.2d 763 (Tex. App.—Fort Worth 1961,
no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Transp. Co. of Tex. v. Robertson Transports, Inc.*,
261 S.W.2d 549 (Tex. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Universal Health Servs. v. Thompson*,
   24 S.W.3d 570 (Tex. App.—Austin 2000,
   no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Statutes**

Acts 2023, 88th Leg., R.S., Ch. 769, sec. 1.01 . . . . . . . . . . . . . . . 2

TEX. CIV. PRAC. & REM. CODE § 6.001 . . . . . . . . . . . . . . . 4

TEX. CIV. PRAC. & REM. CODE § 51.014(b). . . . . . . . . . . . . . . 22

TEX. GOV'T CODE § 533.002 . . . . . . . . . . . . . . . . . . 19

TEX. GOV'T CODE § 533.003 . . . . . . . . . . . . . . . . 13, 14

TEX. GOV'T CODE § 533.003(a)(1) . . . . . . . . . . . . . 2, 13, 14, 17

TEX. GOV'T CODE § 533.003(a)(2) . . . . . . . . . . . . . . . . 19

TEX. GOV'T CODE § 533.004 . . . . . . . . . . . . . . . . . *passim*

TEX. GOV'T CODE § 533.004(a). . . . . . . . . . . . . . . . . 5, 17

TEX. GOV'T CODE § 533.0035. . . . . . . . . . . . . . . . . . 8, 17

TEX. GOV'T CODE § 536.052 . . . . . . . . . . . . . . . . . 2, 14

TEX. GOV'T CODE § 536.052(d). . . . . . . . . . . . . . . . . 2, 15

TEX. GOV'T CODE § 540.0051. . . . . . . . . . . . . . . . . . 19

TEX. GOV'T CODE § 540.0203 . . . . . . . . . . . . . . . . . . . 8

TEX. GOV'T CODE § 540.0204 . . . . . . . . . . . . . . . . . 2, 14

TEX. GOV'T CODE § 540.0206 . . . . . . . . . . . . . . . . . . . 3

TEX. GOV'T CODE § 543A.0052 . . . . . . . . . . . . . . . . 2, 14

TEX. GOV'T CODE § 2155.144(c) . . . . . . . . . . . . . . . 2, 18, 19

Page

TEX. GOV'T CODE § 2155.144(d) . . . . . . . . . . . . . . . . . . . . . . 2

TEX. HEALTH & SAFETY CODE § 62.155 . . . . . . . . . . . . . . . . . . 3, 15

**REGULATIONS**

1 T.A.C. § 391.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1 T.A.C. § 391.209(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . 18

**RULES**

TEX. R. APP. P. 24.2(a)(3) . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. R. APP. P. 29.3 . . . . . . . . . . . . . . . . . . . . . . . *passim*

TEX. R. APP. P. 52.10 . . . . . . . . . . . . . . . . . . . . . . . . . 24

## INTRODUCTION

The notice of appeal filed by Appellant Cecile E. Young, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission ("HHSC") automatically superseded the trial court's temporary injunction.[1] Under Texas Rule of Appellate Procedure 29.3 and the Court's inherent authority to protect the parties' rights, Appellee Superior HealthPlan, Inc. moves for an order reinstating the temporary injunction pending this appeal's final disposition.

Superior is a managed care organization ("MCO") that brought an *ultra vires* suit against the Executive Commissioner. Appellees Cook Children's Health Plan, Texas Children's Health Plan, and Wellpoint Insurance Company filed separate *ultra vires* suits against the Executive Commissioner. The trial court consolidated the four suits into a single case.[2] The consolidated suits arise from the Executive Commissioner's failure to comply with law in procuring managed care services for the State of Texas Access Reform ("STAR") Medicaid program and the Children's

---

[1] Molina Healthcare of Texas, Inc. and Aetna Better Health of Texas, Inc. have also purported to file notices of appeal of the trial court's temporary injunction. The Appellees' have filed a joint motion to dismiss Molina's and Aetna's appeals. For the reasons in that motion, Superior disagrees that Molina and Aetna are proper parties to this appeal.

[2] CR:2278.

Health Insurance Program ("CHIP") (together, "STAR & CHIP") under Request for Proposals No. HHS0011152 (the "RFP"). After an unlawful procurement process, HHSC issued a notice of intent to award contracts. If the Executive Commissioner authorizes HHSC to execute contracts based on the intended contract awards, her action will be *ultra vires* because (among other reasons detailed below):

- The intended contract awards do not "give preference to organizations that have significant participation in the organization's provider network from each health care provider in the region who has traditionally provided care to Medicaid and charity care patients" as required by Texas Government Code section 533.003(a)(1);[3]

- The intended contract awards do not give preference to organizations that have successfully implemented quality initiatives as required by Texas Government Code section 536.052(d);[4]

- HHSC did not document all relevant factors identified in Texas Government Code section 2155.144(c) in determining the intended contract awards, including, but not limited to, quality and past performance, as required by Texas Government Code section 2155.144(d); and

---

[3] Effective April 1, 2025, portions of Texas Government Code Chapter 533 were repealed and recodified as part of "the nonsubstantive revision of the health and human services laws governing the Health and Human Services Commission, Medicaid, and other social services." Acts 2023, 88th Leg., R.S., Ch. 769, sec. 1.01. Section 533.003 was recodified as Texas Government Code section 540.0204. *Id.* Because the applicable statutes were in Chapter 533 at the time of the temporary-injunction hearing, and for consistency of reference, in this appeal, Superior will continue to refer to the sections in Chapter 533 as they existed at the time of the trial court's order on appeal.

[4] Section 536.052 has been recodified as Texas Government Code section 543A.0052.

- The intended award of "mandatory" non-Medicaid CHIP contracts violates Texas Government Code section 533.004,[5] which applies to only Medicaid contracts and also violates Texas Health & Safety Code section 62.155, which requires competitive procurement of CHIP contracts.

HHSC's STAR & CHIP procurement was also fatally compromised by the improper disclosure of proposals to third parties, including counsel for a rival bidder, during the procurement. The disclosure created an unlevel playing field that destroyed the procurement's integrity. If the Executive Commissioner authorizes HHSC to proceed with the intended contract awards, a majority of STAR & CHIP members (more than 1.5 million of Texas's most vulnerable residents including pregnant women and children) will lose their current health plan.

After a three-and-a-half-day evidentiary hearing, the trial court denied the Executive Commissioner's plea to the jurisdiction, thereby rejecting the Executive Commissioner's assertion that the trial court lacked jurisdiction to hear the matter. The court also temporarily enjoined the Executive Commissioner from signing, executing, or taking any other action to implement the intended contract awards under

---

[5] Section 533.004 has been recodified as Texas Government Code section 540.0206.

the RFP and halted proceedings in a separate procurement, the STAR Kids procurement, which HHSC is admittedly administering the same way as the STAR & CHIP procurement.[6]

The Executive Commissioner's appeal of the Temporary Injunction supersedes the injunction. Tex. R. App. P. 24.2(a)(3); Tex. Civ. Prac. & Rem. Code § 6.001. The Executive Commissioner has agreed to abide by the Temporary Injunction until this Court decides any motions for temporary relief under Rule 29.3. Superior requests that this Court reinstate the temporary injunction under Rule 29.3 and its inherent authority until disposition of this appeal. By granting a temporary injunction, the trial court determined that Superior and the other Appellees have a probable right to relief on their requests for declaratory judgment against the Executive Commissioner. The trial court also found that Superior and the other Appellees would suffer imminent, irreparable harm without injunctive relief. As explained in this motion, temporary relief from this Court is necessary to prevent that harm, to preserve Superior's rights until disposition of the appeal, and to maintain the status quo.

---

[6] CR:5875 (attached as Ex. A).

Superior therefore respectfully requests that this Court exercise its inherent powers and its authority under Rule 29.3 to issue a temporary order that reinstates the temporary injunction while this appeal is pending.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. HHSC's RFP

In December 2022, HHSC issued the RFP soliciting proposals from MCOs for STAR & CHIP managed care services in all 13 service areas ("SAs") throughout the State.[7] The RFP capped the number of MCOs that would be awarded STAR & CHIP contracts in each SA and the number of STAR & CHIP contracts that could be awarded to an MCO.[8] The RFP mandated that a respondent submit a single proposal for all SAs without differentiation by SA.[9] It also required respondents to designate and rank in order the SAs in which they wanted to provide services.[10]

Texas Government Code section 533.004 mandates that HHSC award certain Medicaid managed care contracts (including STAR) if an MCO meets the statute's requirements (each a "mandatory contract"). *See* TEX. GOV'T CODE §

---

[7] CR:3519; 5RR:76–77& Ex. P-38 (the RFP). The exhibits from the temporary injunction hearing are in volumes 9 through 20 of the Reporter's Record.

[8] CR:3519, 3521–22; 5RR:76–77 & Ex. P-38 (RFP § 3.1.7.2).

[9] CR:3520; 5RR:76–77 & Ex. P-38 (RFP § 2.5.2).

[10] CR:3520; 5RR:76–77 & Ex. P-38 (RFP § 2.5.2).

533.004(a). Even though CHIP is not a Medicaid program to which section 533.004 applies, the RFP does not provide a separate process for awarding CHIP contracts to respondents that also meet section 533.004's requirements for mandatory Medicaid contracts.[11]

The RFP describes a multistage process that started with an initial compliance screening and scoring of responses to technical questions.[12] After the technical questions were scored, respondents in the competitive range were invited to participate in oral presentations, which were also scored.[13] Under the RFP, all respondents with a valid section 533.004 mandatory contract claim proceeded to oral presentations regardless of score.[14] The RFP notified respondents in advance of the four topics to be addressed by scenarios during oral presentations.[15] A respondent's final weighted score was to be determined by combining the weighted technical question score with the weighted oral presentation score.[16]

---

[11] CR:3531–32, 3538–40; 5RR:76–77 & Ex. P-38 (RFP § 1.1); 6RR:50 ("And CHIP is not a Medicaid program and does not fall under 533.004; correct? A: That's correct.").

[12] CR:3521; 5RR:76–77 & Ex. P-38 (RFP § 2.1).

[13] CR:3521; 5RR:76–77, 79–80 & Exs. P-38 (RFP § 3.1.3.3) & P-284 at 5–6.

[14] CR:3521; 5RR:76–77 & Exs. P-38 (RFP §§ 3.1.3.3, 3.1.6) & P-284 at 6.

[15] CR:3521; 5RR: 76–77 & Ex. P-38 (RFP § 3.1.5).

[16] CR:3521; 5RR:76–77 & Ex. P-38 (RFP §§ 3.1.5, 3.1.6); 5RR:208–09.

HHSC invited Superior to participate in oral presentations along with all other Respondents.[17] The oral presentations concluded on October 13, 2023.[18]

The RFP arbitrarily capped the number of MCO contracts in each SA and limited the number of SAs that an MCO could be awarded under the RFP to seven.[19] The RFP sets forth a methodology for determining SA assignments, which equate to contract awards.[20] Under the RFP's formulaic approach:

- in each SA where only one respondent has a validated section 533.004 mandatory contract claim, that respondent will be assigned to the SA without any consideration or reference to scores;

- in each SA where more than one respondent has a validated section 533.004 mandatory contract claim, the respondent with the highest final weighted score of those respondents with a validated section 533.004 claim in the SA will be assigned to the SA, and all other respondents with a validated section 533.004 claim will be considered in the same manner as respondents without a validated section 533.004 claim;[21] and

- after assignment of respondents with validated section 533.004 mandatory contract claims, respondents will be assigned to SAs in descending order based on each respondent's final weighted score until the maximum number of MCOs per SA has been assigned, using each

---

[17] CR:3521; 5RR:79–80 & Ex. P-284 at 6.

[18] CR:3521; 5RR:79–80 & Ex. P-284 at 6.

[19] CR:3521–22; 5RR:79–80 & Ex. P-284 at 6.

[20] CR:3521–22; 5RR:76–77 & Ex. P-38 (RFP § 3.1.7.3).

[21] No SA had more than one respondent with a validated section 533.004 mandatory contract claim. 5RR:79–80 & Ex. P-284 at 3–4.

respondent's ranked order of preference up to a maximum of seven SA assignments per respondent.[22]

The RFP requires HHSC to certify that each respondent recommended for an award is "reasonably able to fulfill the terms of the Contract, as required by Texas Government Code Section 533.0035."[23] The RFP states that failure to obtain this certification "will result in no further consideration for Contract award, and another Respondent may be considered for Contract award in accordance with this section."[24] Instead of doing its own investigation and making the required certification, HHSC simply relied on each respondent's self-certification that it will be reasonably able to fulfill the terms of any contract awarded.[25]

## 2. The Intended Contract Awards and the Resulting Disruption of Healthcare for More than 1.5 Million Vulnerable Texans

In March 2024, HHSC, under the Executive Commissioner's direction, issued notice of the intended contract awards from the RFP.[26] These intended

---

[22] CR:3521–22; 5RR:76–77 & Ex. P-38 (RFP § 3.1.7.3) at 30.

[23] CR:3522; 5RR:76–77 & Ex. P-38 (RFP § 3.1.7.5) at 31. Section 533.0035 has been recodified without substantive change at Texas Government Code section 540.0203.

[24] CR:3522; 5RR:76–77 & Ex. P-38 (RFP § 3.1.7.5) at 31.

[25] CR:3532; 5RR:266–68 & Ex. P-192; *see also* 5RR:274 ("Q. And so HHSC just took as to true anything that an MCO put in their responses to the specific certification questions; is that correct? A. Yes. We relied on the representation of truth and accuracy that's made in the context of submitting a response, yes.").

[26] *See* CR:3523–24; 5RR:81–82 & Ex. P-95.

contract awards are based on a procurement process in which HHSC violated statutory procurement requirements. Thus, if the intended contract awards are finalized, the Executive Commissioner will exceed her authority under the statutes governing HHSC's procurement of Medicaid and CHIP managed care contracts and will negatively impact more than 1.5 million children, pregnant mothers, and families throughout the State of Texas.[27] The *ultra vires* intended contract awards will have devastating implications for STAR & CHIP members, healthcare providers, and the Texas Medicaid managed care system as a whole.[28] Superior seeks prospective relief prohibiting the Executive Commissioner from finalizing awards made under a process that violates the Executive Commissioner's lawful authority.[29]

### 3. HHSC's Wrongful Disclosure

The procurement was also fundamentally flawed because HHSC erroneously disclosed proposals (including Superior's) to third parties, including one of Superior's competitors, while the procurement was ongoing.[30] This wrongful disclosure

---

[27] *See* CR:3512, 3514, 3524–25, 3555–56, 3585–87; 7RR:102–04.

[28] CR:3512, 3514, 3518, 3524–25, 3555–56; *see also* 6RR:144 (Executive Commissioner concedes that the intended contract awards will require more than 1.5 million Texans to change health plans).

[29] CR:3525–26.

[30] CR:3526–27; *see also* 5RR:129, 137–40 (testimony of an HHSC employee about the disclosure).

undermined the procurement's integrity. Ensuring a level playing field is a basic tenet of procurement law.[31] This procurement utterly failed in that regard.[32]

In August 2023, months before issuing notice of the intended contract awards, HHSC erroneously disclosed the proposals to third parties.[33] The proposals were disclosed to legal counsel for Aetna, a respondent to the RFP. The disclosure happened *during the evaluation of proposals and before Aetna's oral presentation*.[34] In January 2024, months after wrongfully disclosing the proposals (and before issuing the notice of intended contract awards), HHSC recognized its error. It emailed the recipients of the erroneously disclosed proposals asking that the proposals be destroyed, but this attempted cure was too late.[35] Moreover, HHSC did not confirm, and does not know, whether all the copies were destroyed.[36]

This improper disclosure of the proposals to Aetna destroyed the integrity of the procurement and created an unlevel playing field where Aetna enjoyed an unfair

---

[31] CR:3526–27; *see also* 5RR:126–29 (testimony of an HHSC employee about the importance of keeping proposals confidential while the procurement is ongoing).

[32] 6RR:14–16 (testimony of an expert on government procurement about the effect of the disclosures).

[33] CR:3526–27, 3588–3602; *see also* 5RR:129, 135–38; 6RR:161–62.

[34] CR:3526, 3588–92; *see also* 5RR:137–40.

[35] CR:3527; 5RR:138–39, 142–45 & Exs. P-78, P-80, P-81.

[36] CR:3527; 5RR:138–39.

competitive advantage going into its oral presentations.[37] The RFP notified respondents that oral presentations would address the following subjects: oversight and coordination with subcontractors, maternal mortality and morbidity, coordination with dental maintenance organizations, and preventive care rates.[38] All of these subjects were covered in each respondent's proposal.[39] Indeed, Wellpoint's representative testified that the disclosed copy of its proposal reflected Wellpoint's strategy relating to subcontracting, and he explained how Wellpoint's competitors could have used that information in preparing for their oral presentations.[40] Thus, the undisputed evidence presented at the hearing demonstrated that Aetna could use the information in its competitor's proposals to bolster its own responses and undercut its competitors in the oral presentations.[41]

HHSC's release of the proposals before the oral presentations and while the evaluation was ongoing irretrievably compromised the procurement's integrity.[42]

---

[37] CR:3526–27; 6RR:15, 31–32.

[38] CR:3526–27; 5RR:76–77 & Ex. P-38 at 27 (RFP § 3.1.5); 5RR:140.

[39] CR:3526–27.

[40] 6RR:35–37 & Excerpts from Ex. P-236; 8RR:88–89.

[41] CR:3526–27; 6RR:30–32, 37.

[42] CR:3528, 3603–39; *see also* 6RR:16–17 (hearing testimony of Superior's procurement expert).

Thus, HHSC failed to follow applicable law requiring a consistent and uniform procurement process, fair consideration of proposals, and transparency as required by HHSC's own rules governing the procurement.[43]

### 4. The Executive Commissioner Is Poised to Further Her Unlawful Conduct through Administration of the STAR Kids RFP

In May 2024, HHSC issued Request for Proposals No. HHS0013071 (the "STAR Kids RFP") seeking bids for STAR Kids, a separate Texas Medicaid managed care program that provides benefits to disabled children and young adults.[44]

The STAR Kids RFP is nearly identical to the STAR & CHIP RFP.[45] HHSC developed the process for the STAR & CHIP procurement and the STAR Kids procurement together. An HHSC representative testified at the injunction hearing that HHSC is using the same process for the STAR Kids RFP that it used for the STAR & CHIP RFP.[46] In fact, the representative confirmed that in the STAR Kids RFP, HHSC will treat the statutory preferences the same as it did in the STAR & CHIP RFP—in other words, HHSC will fail to apply the statutorily required preferences.[47]

---

[43] CR:3528; *see also* 6RR:16–17.

[44] CR:3530.

[45] CR:3530; *see also* 5RR:78; 6RR:229–30.

[46] 5RR:78; 6RR:229–30..

[47] *Id.*

If HHSC evaluates proposals for the STAR Kids RFP just like the STAR & CHIP RFP, then the Executive Commissioner again will act *ultra vires*.[48]

5.      **The Executive Commissioner's *Ultra Vires* Actions**

Appellees established that the Executive Commissioner has acted and will act *ultra vires* in at least the following ways:[49]

*First*, in determining the intended contract awards, HHSC, under the Executive Commissioner's direction, failed to "give preference to organizations that have significant participation in the organization's provider network from each health care provider in the region who has traditionally provided care to Medicaid and charity care patients" as required by Texas Government Code section 533.003. An HHSC employee admitted at the hearing that section 533.003(a)(1) is mandatory, that it requires HHSC to give a preference based on existing provider networks, and that it requires those networks to be evaluated by region.[50] But the proposals were not divided by region because the RFP was a statewide procurement, and there was no scoring based on region.[51] The RFP does not include any discussion of the preference

---

[48] CR:3530.

[49] CR:3531–33.

[50] 5RR:221–23.

[51] 5RR:97–98.

required by section 533.003(a)(1) and does not explain how HHSC would give the required preference.[52] And nothing in the RFP asked respondents to provide information about their existing provider networks from which the preference in section 533.003(a)(1) could be determined.[53] Nor did HHSC consider publicly available information that would demonstrate the extent of the respondents' existing provider networks.[54] HHSC's training for the evaluators failed to instruct them to consider any respondent's existing provider network, much less any respondent's existing network *by region, or whether the network includes providers that have traditionally provided Medicaid and charity care.*[55] Nor did HHSC instruct evaluators to give any preference as required by section 533.003(a)(1).[56]

**_Second_**, in determining the intended contract awards, HHSC, under the Executive Commissioner's leadership, failed to give preference to organizations that have successfully implemented quality initiatives or meet quality of care and cost-

---

[52] 5RR:76–77, 85–86 & Ex. P-38.

[53] 5RR:97.

[54] CR:3534–35; 5RR:98.

[55] 5RR:88–89 ("Q. HHSC didn't instruct the evaluators on the Section 533.003 or 536.052 preferences, did it? A. No."). Again, as of April 1, 2025, section 533.003 has been recodified without substantive change at Texas Government Code section 540.0204, and section 536.052 has been recodified without substantive change at Texas Government Code section 543A.00052.

[56] *Id.*

efficiency benchmarks as required by Texas Government Code section 536.052(d).[57] The Executive Commissioner readily admitted in public testimony before the House Human Services Committee that existing quality metrics were not considered in making the contract awards; rather, HHSC considered what the respondents promised to do in the future.[58] An HHSC employee testified at the injunction hearing that the RFP did not ask respondents to provide information about their implementation of quality initiatives in the past, and that evaluators were not told to consider past implementation of quality initiatives and would not have done so unless a respondent happened to include that information in their proposal.[59]

*Third*, HHSC, under the Executive Commissioner's direction, is proposing to unlawfully award CHIP contracts to respondents that HHSC has determined meet the requirements for a mandatory contract under Texas Government Code section 533.004, which applies *only* to Medicaid programs (such as STAR) but not to CHIP, which is not a Medicaid program. In addition to section 533.004, this action would also violate Texas Health & Safety Code section 62.155, which requires HHSC to competitively procure CHIP contracts without any mandatory contract

---

[57] CR:3535–38; 5RR:100–03.

[58] 6RR:162–64; 5RR:162 & Ex. P-148 at 64–65.

[59] 5RR:102–04..

set-aside. An HHSC employee who testified at the hearing conceded that section 533.004 does not apply to CHIP.[60] Instead, under the "guise" of a best value determination, HHSC intends to award CHIP contracts to those respondents HHSC has determined are entitled to a mandatory contract under section 533.004 without any statutory authority and without considering the scores awarded in the procurement.[61] In fact, HHSC intends to award a CHIP contract to every respondent in the STAR & CHIP procurement that claimed entitlement to a Medicaid mandatory contract under section 533.004, regardless of that respondent's score, including the respondent that came in last place out of all 18 respondents.[62]

In response to a protest to the STAR & CHIP RFP submitted by Wellpoint (formerly Amerigroup) before the proposal deadline, HHSC considered amending the RFP to provide for mandatory contract awards only for STAR Medicaid contracts, with CHIP awards being determined based on scoring.[63] But HHSC denied the protest and did not to amend its process.[64] By allowing HHSC to move forward

---

[60] 5RR:111.

[61] 5RR:125–26.

[62] 6RR:59, 157.

[63] 6RR:51–52.

[64] 6RR:153–54; 8RR:70.

with contracts that unlawfully award CHIP contracts based on a respondent's eligibility for a mandatory contract under section 533.004, the Executive Commissioner will exceed the scope of her legal authority.[65]

*Fourth*, the intended contract awards, if finalized, will violate Texas Government Code section 533.004, as amended in 2021, because the Executive Commissioner proposes to award mandatory contracts without statutorily required considerations, including considerations regarding provider networks in the region under Texas Government Code section 533.003(a)(1), as required by Texas Government Code section 533.004(a).[66]

*Fifth*, the Executive Commissioner intends to award contracts that do not comply with HHSC's obligation under Texas Government Code section 533.0035 to "evaluate and certify that the organization is reasonably able to fulfill the terms of the contract, including all requirements of applicable federal and state law" before awarding a contract to an MCO. The Executive Commissioner allowed respondents to self-certify without any meaningful evaluation by HHSC.[67] Because the statute

---

[65] CR:3538–40.

[66] CR:3541–42; 5RR:124–26.

[67] CR:3544–45; 5RR:266–68 & Ex. P-192; *see also* 5RR:27 ("Q. And so HHSC just took as to true anything that an MCO put in their responses to the specific certification questions;

requires certification by HHSC, not self-certification, the intended contract awards violate this statute.

**_Sixth_**, HHSC's wrongful disclosure of the proposals, including to Aetna's legal counsel, destroyed the procurement's integrity and created an unlevel playing field resulting in intended contract awards procured through a process that does not provide fair consideration of proposals as required by 1 T.A.C. section 391.209(3)(A), and that is far from consistent, uniform, and transparent, as required by 1 T.A.C. section 391.101.[68] The Executive Commissioner allowed HHSC to issue the intended contract awards and continues to allow HHSC to proceed with the procurement notwithstanding her and HHSC's knowledge of this fatal error.[69]

**_Seventh_**, the intended contract awards will violate Texas Government Code section 2155.144(c) because HHSC did not document its consideration of the relevant best value criteria in that section. The requirement that HHSC document that

---

is that correct? A. Yes. We relied on the representation of truth and accuracy that's made in the context of submitting a response, yes.").

[68] CR:3546–47, 3588–3639; *see also* 6RR:16–17 (hearing testimony of Superior's procurement expert).

[69] 5RR:129, 136; 6RR:161–62.

it has considered all relevant best value factors is mandatory, not discretionary.[70]

Under the intended contract awards, the Executive Commissioner will fail to implement STAR by contracting with MCOs to improve Texans' health by promoting continuity of care and ensuring high quality health care services in the recipient's local community as required by Texas Government Code section 533.002.[71] Nor did the Executive Commissioner give extra consideration to continuity of care as required by section 533.003(a)(2). An HHSC employee testified that HHSC did not take into account that more than 1.5 million Texans will have to change health plans under the intended contract awards.[72] Thus, the Executive Commissioner cannot show that HHSC's intended contract awards comply with the requirement in section 2155.144(c) to document that HHSC considered all relevant factors, including, but not limited to, quality and past performance.

## 6.    The Trial Court's Temporary Injunction

Following an evidentiary hearing that lasted three-and-a-half-days with 11 witnesses (including the Executive Commissioner) testifying, the trial court denied the

---

[70] CR:3533, 3549; 5RR:107–08, 169, 226–27.

[71] Section 533.002 has been recodified without substantive change at Texas Government Code section 540.0051.

[72] 6RR:97–98 ("Did HHSC consider the transition of hundreds of thousands if not over a million of Texans when evaluating the proposals? A. No.").

Executive Commissioner's plea to the jurisdiction and enjoined the Executive Commissioner from awarding, signing, executing, or taking any other action to implement the intended contract awards under the RFP.[73] The court also enjoined the Executive Commissioner from proceeding with the STAR Kids RFP which the testimony at the hearing established is modeled after the STAR & CHIP procurement.[74]

The trial court found that "[Appellees] have established a cause of action against [the Executive Commissioner] and a probable right to the relief sought on their claims that [the Executive Commissioner] has violated and, unless enjoined, will continue to violate statutory and regulatory requirements applicable to the RFP."[75] The court specifically found that "[Appellees] have established that [the Executive Commissioner] has violated and will continue to violate the Texas Government Code, Texas Health and Safety Code, and Texas Administrative Code in procuring managed care contracts for STAR & CHIP in Texas."[76] The court determined that "sovereign immunity does not bar [Appellees'] claims or deprive the [trial court] of subject-matter jurisdiction" because "[Appellees] properly seek only

---

[73] CR:5883 (attached as Ex. A).

[74] *Id.*

[75] CR:5876.

[76] CR:5877.

prospective relief—specifically injunctive relief prohibiting [the Executive Commissioner] from awarding, executing, or otherwise implementing the intended RFP contract and thus preventing further unlawful acts in connection with Defendants' procurement or contracting processes, as well as accompanying declaratory relief."[77] The court also made specific findings about the ways the Executive Commissioner has and will continue to act *ultra vires* unless enjoined.[78]

The court also found that each Appellee would suffer irreparable harm without injunctive relief.[79] Superior's harm includes loss of members even before the implementation of the proposed contracts, loss of employees because of the uncertainty created by the intended contract awards, loss of providers participating in Superior's network because of the uncertainty and lack of leverage in provider negotiations, loss of investments in strategic partnerships intended to scale over time, and a decrease in Superior's ability to continue to offer the same level of service in the time leading up to implementation of the proposed contracts.[80] The court found that money damages would not be adequate compensation because the harms cannot be

---

[77] CR:5876

[78] CR:5877–78.

[79] CR:5879–82.

[80] CR:5880–81.

measured by any certain pecuniary standard and because the Executive Commissioner would be immune from any damages claims.[81] The court also found that the potential harm to the Appellees outweighs any potential harm to the Executive Commissioner or HHSC from maintaining the statute quo, considering operations under the intended contract awards were not scheduled to begin until September 1, 2025, and HHSC has extended STAR & CHIP contracts in the past.[82] Finally, the court found that the public will not be harmed by a temporary injunction, but would suffer harm if injunctive relief were not granted particularly given that more than 1.5 million STAR & CHIP members would be forced to change health plans.[83] The trial court also set a bond[84] and by the parties' agreement, set trial on the merits for November 3, 2025.[85]

The Executive Commissioner appealed the denial of her plea to the jurisdiction and the grant of the temporary injunction. On a joint motion by the Executive

---

[81] CR:5882.

[82] *Id.*

[83] CR:5883–84.

[84] CR:5884.

[85] *Id.*. Because the Executive Commissioner has also appealed the denial of her plea to the jurisdiction, all proceedings in the trial court have been automatically stayed during this appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(b).

Commissioner and the Appellees, this Court abated the appeal during the 2025 legislative session. The Executive Commissioner has agreed to abide by the temporary injunction until this Court disposes of the Appellees' motions for temporary relief under Rule 29.3.[86]

## ARGUMENT

**1.** **This Court has authority to enjoin further action by the Executive Commissioner pending resolution of this appeal.**

Texas Rule of Appellate Procedure 29.3 authorizes this Court to "make any temporary orders necessary to preserve the parties' rights until disposition of the appeal." TEX. R. APP. P. 29.3. The Court also has inherent authority "to preserve a party's right to judicial review of acts that it alleges are unlawful and will cause it irreparable harm." *Tex. Health & Human Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*, No. 03-21-00136-CV, 2021 WL 2371356, at *5 (Tex. App.—Austin June 9, 2021, no pet.). The Texas Supreme Court has acknowledged this authority, holding that Rule 29.3 gives an appellate court the power to provide relief notwithstanding the state's automatic right to suspend a temporary injunction. *See generally In re Tex. Educ. Agency*, 619 S.W.3d 679 (Tex. 2021) (orig. proceeding).

---

[86] The agreement is attached hereto as Ex. B.

The Supreme Court has also confirmed that "Rule 29.3 expressly contemplates" that a party can ask "the court of appeals to protect it from irreparable harm." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 89 (Tex. 2019) (orig. proceeding); *see also Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, 609 S.W.3d 569, 578 (Tex. App.—Austin 2020, no pet.) ("Rule 29.3 provides a mechanism by which [this Court] may exercise the scope of [its] authority over parties, including [its] inherent power to prevent irreparable harm to parties properly before [it] pursuant to [its] appellate jurisdiction in an interlocutory appeal."). The Texas Supreme Court has also held that Rule 29.3 allows courts of appeals to issue temporary orders to preserve the status quo. *In re Abbott*, 645 S.W.3d 276, 282 (Tex. 2022); *see also Tex. Educ. Agency v. A+ Texas Teachers*, No. 03-23-00318-CV, 2023 WL 4981604, at *2 (Tex. App.—Austin Aug. 4, 2023, no pet.).

About a year ago, the Texas Supreme Court provided additional guidance about the standards for temporary orders under Rule 29.3. *See In re State*, 711 S.W.3d 641 (Tex. 2024). In that case, the Court addressed a request for temporary relief under Rule 52.10. *Id.* at 644. But the Court analogized the standards for relief under Rule 52.10 to the standards for relief under Rule 29.3. *Id.* Accordingly, the Court's statements about proper considerations for relief under Rule 52.10 are instructive.

The Court noted that "the familiar considerations governing injunctive relief in other contexts will generally apply in this context as well." *Id.* at 645.

The Court observed that some preliminary inquiry into the merits may be necessary because "'just relief' that 'preserve[s] the parties' rights' cannot be afforded without some consideration of the merits." *Id.* The merits should not be "definitively decided," but the Court should make a preliminary inquiry into the merits of the parties' positions. *Id.* "Another essential consideration attendant on any request for injunctive relief, including in this posture, is the injury that will befall either party depending on the court's decision." *Id.* The Court may also consider "other case-specific equitable considerations that bear on its exercise of discretion." *Id.*

## 2. The Court should reinstate the trial court's injunction pending resolution of this appeal.

### A. The trial court correctly found that Appellees established a probable right to relief.

As an initial matter, the merits of Superior's and the other Appellees' positions warrant relief under Rule 29.3. As discussed on pages 13–19 above, the evidence shows that the Executive Commissioner has acted, and will act, *ultra vires* in multiple respects if the intended contract awards are finalized and the contracts executed and implemented. The Executive Commissioner's decision to issue the notice of the intended contract awards violated, and finalizing those contract awards and executing

the contracts will violate numerous statutes governing the procurement. Moreover, HHSC improperly disclosed the proposals to Aetna (which also responded to the RFP) before Aetna's oral presentation and before HHSC finished evaluating the proposals. This improper disclosure infected the entire procurement process and forever destroyed the procurement's integrity, casting serious doubt on the fairness and propriety of the intended contract awards.

As detailed on pages 13-23, above, during the multi-day hearing, the trial court heard evidence and made findings that HHSC did not ask respondents for information necessary to apply the mandatory statutory preferences, did not train the evaluators about the existence of preferences or instruct them to consider the preferences, and did not consider available information about the respondents' existing provider networks or implementation of quality initiatives. The proposed awards also improperly tie mandatory contracts under section 533.004 (which applies to only Medicaid) with the CHIP process, so that HHSC intends to automatically award a CHIP contract to every respondent that submitted a mandatory contract claim under section 533.004, regardless of the respondent's score. The process also failed to consider continuity of care (that is, the detailed process by which the oversight of a member's healthcare is transferred from one MCO to another), even though the proposed awards will force *more than 1.5 million STAR & CHIP members*

to change their health plans. HHSC also used a perfunctory self-certification process and failed to investigate whether the respondents are capable of fulfilling the proposed contracts' terms as required by statute. The trial court therefore correctly concluded that Superior and the other Appellees have established a probable right to relief on the merits of their claims.

### B. A temporary order is necessary to prevent irreparable harm to Superior.

The Texas Supreme Court has held that Rule 29.3 allows a court of appeals to issue temporary orders to protect parties from irreparable harm. *Geomet*, 578 S.W.3d at 89. Regarding Superior, the trial court found that execution of the proposed contracts would begin transition activities toward new contracts that would substantially reduce the number of STAR & CHIP members that Superior serves today, causing real and immediate harm to Superior.[87] Contract execution would destabilize Superior's workforce, as its employees—already grappling with the uncertainty of their jobs in light of the intended awards—would be at heightened risk for targeted recruitment by competing MCOs.[88] Superior also demonstrated that, absent injunctive

---

[87] CR:5880–81 (attached as Ex. A); 7RR:104 (over 700,000 current Superior members will have to change plans if the Executive Commissioner proceeds with the intended contract awards).

[88] CR:5880–81 (attached as Ex. A); 7RR:113–15.

relief, the intended contract awards would jeopardize its provider networks by discouraging providers from contracting with Superior and diminishing Superior's bargaining power in provider negotiations.[89] The loss of employees and providers will make it difficult or impossible for Superior to continue providing the same level of service that it currently provides under its existing STAR & CHIP contract through the end of the term of that contract.[90] This will not only hinder Superior's operations but will also cause reputational damage.[91]

Superior also presented evidence that it will begin losing membership immediately if the contracts are executed, even though the new STAR & CHIP contracts are not scheduled to be operational for some time.[92] Providers are already informing Superior's members that Superior will no longer be providing STAR & CHIP services in certain areas of the state and are encouraging members to switch plans.[93] The confusion among providers and members alike will only worsen if the contract awards are executed notwithstanding the pending challenge to their legality.[94]

---

[89] CR:5880–81 (attached as Ex. A); 7RR:115–16.

[90] CR:5880–81 (attached as Ex. A); 7RR:115.

[91] CR:5880–81 (attached as Ex. A); 7RR:115.

[92] CR:5880–81 (attached as Ex. A); 7RR:116–17.

[93] CR:5880–81 (attached as Ex. A); 7RR:116–17.

[94] CR:5880–81 (attached as Ex. A); 7RR:116–17.

Money damages will not be sufficient because the harm Superior will suffer will be extremely difficult to measure by any pecuniary standard.[95] Moreover, money damages will not be sufficient because the state would claim immunity from any damages claims.[96]

**C.     Without a temporary order, Superior's claims could be rendered moot.**

Another consideration in granting temporary relief under Rule 29.3 is ensuring that parties will not lose their ability to obtain effective judicial relief. In *Texas Education Agency*, the Austin Court of Appeals encountered a similar factual situation and granted temporary relief. *Tex. Educ. Agency*, 609 S.W.3d at 578. The court recognized that without temporary relief to preserve the parties' rights until the disposition of the appeal, the nongovernmental party could be prevented "from ever meaningfully challenging acts by the executive branch that the party alleges to be both unlawful and reviewable by courts and that it further alleges will cause it irreparable harm." *Id.* at 578 (citing *Geomet*, 578 S.W.3d at 89). Accordingly, the court concluded that "to effectively perform our judicial function and to preserve the separation of powers, we must exercise our inherent authority and use Rule 29.3 to make

---

[95] CR:5882 (attached as Ex. A).

[96] *Id.*

orders "to prevent irreparable harm to parties that have properly invoked [our] jurisdiction in an interlocutory appeal." *Id.* (quoting *Geomet*, 578 S.W.3d at 90). The Supreme Court upheld the court's grant of temporary relief. *See In re Tex. Educ. Agency*, 619 S.W.3d 679, 692 (Tex. 2021) (holding that "the court of appeals was not without power to issue temporary relief").

Here, without temporary relief, Superior may lose its ability to meaningfully challenge the Executive Commissioner's actions. If the Executive Commissioner is permitted to execute any STAR & CHIP contracts pursuant to the RFP while the appeal is pending, Superior could be deprived of its primary remedy: a declaration that the Executive Commissioner will act *ultra vires* should she execute or attempt to implement the contract awards and an injunction to prevent that *ultra vires* action. Similarly, if the Executive Commissioner continues processing the STAR Kids RFP, Superior could be deprived of available remedies for the *ultra vires* actions in the STAR Kids RFP if HHSC executes STAR Kids contracts before this appeal is decided. Thus, any meaningful challenge to the Executive Commissioner's actions requires that she be temporarily enjoined from taking any steps to award or execute the proposed contracts or to continue processing the Star Kids RFP until Superior's claims are fully adjudicated.

**D. A temporary order will preserve the status quo pending appeal.**

Appellate courts have "great flexibility in preserving the status quo based on the unique facts and circumstances presented." *Geomet*, 578 S.W.3d at 89. The Texas Supreme Court defines "the status quo" as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding). "If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists after the action." *Universal Health Servs. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (quoting *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)). Moreover, "where an order is entered by a Board or Commission of this State in opposition to the objections and contentions of a party whose justiciable interests are adversely affected thereby, the 'status quo' would be the state of affairs as they existed immediately prior to the time the order was entered." *Tex. State Bd. of Examiners in Optometry v. Lane*, 349 S.W.2d 763, 765 (Tex. App.—Fort Worth 1961, no writ) (citing *Transp. Co. of Tex. v. Robertson Transports, Inc.*, 261 S.W.2d 549 (Tex. 1953)).

Here, the status quo is that the Executive Commissioner has not executed the STAR & CHIP contracts that are the subject of HHSC's intended contract awards

and that no announcement of intended contract awards has been made in the STAR Kids RFP. Executing those contracts and continuing with the STAR Kids RFP would adversely impact Superior's justiciable interests.

This case is similar to *Texas Health & Human Services Commission v. Sacred Oak Medical Center, LLC*, 03-21-00136-CV, 2021 WL 2371356, at *7 (Tex. App.—Austin June 9, 2021) (order on motion for temporary relief). In *Sacred Oak*, HHSC issued an order "denying Sacred Oak's renewal application for the license for its psychiatric hospital and requiring it to cease operations immediately." *Id.* at *1. The trial court entered a temporary injunction that prohibited HHSC from enforcing its order and required it "to restore Sacred Oak to the operational status quo that existed prior to [the Commission's] enforcement of the Order." *Id.* After HHSC appealed, the court of appeals granted temporary relief under Rule 29.3 to reinstate the injunction pending appeal. *Id.* at *7. The court of appeals reasoned that the last peaceable, non-contested status was that Sacred Oak was licensed and open. *Id.* at *5. Accordingly, temporary relief under Rule 29.3 was appropriate to preserve that status quo. Here, the last peaceable, non-contested status is that the Executive Commissioner has not finalized the intended contract awards or signed the contracts and STAR & CHIP members are served by their current health plans. Thus, temporary

relief under Rule 29.3 is proper to preserve that status quo by restraining the Executive Commissioner from taking any action to award, execute, or implement the STAR & CHIP contracts arising out of the RFP, which will result in more than 1.5 million STAR & CHIP members having to change health plans, or to continue with the STAR Kids RFP.

## Conclusion and Prayer

The trial court correctly concluded that Superior has a probable right to relief on the merits of its claims because the Executive Commissioner acted and intends to continue to act *ultra vires* in the procurement process. The trial court also correctly concluded that Superior and the other Appellees face imminent and irreparable harm that warrants temporary injunctive relief. The trial court's injunction was automatically superseded when the Executive Commissioner filed her notice of appeal. To preserve Superior's ability to obtain effective relief, Superior requests that the Court grant temporary relief reinstating the trial court's Temporary Injunction. Superior further requests general relief.

Dated: July 10, 2025

Respectfully submitted,

**Holland & Knight LLP**

By: _/s/ Richard B. Phillips, Jr._

Richard B. Phillips, Jr.
Texas Bar No. 24032833
rich.phillips@hklaw.com

One Arts Plaza
1722 Routh Street, Suite 15500
Dallas, Texas 75201
(214) 964-9500 (telephone)
(214) 964-9501 (facsimile)

Karen D. Walker
_Pro Hac Vice Motion Pending_
karen.walker@hklaw.com
Tiffany Roddenberry
_Pro Hac Vice Motion Pending_
tiffany.roddenberry@hklaw.com

315 S. Calhoun Street, Suite 600
Tallahassee, Florida 32301
(850) 425-5612 (telephone)
(850) 224-8832 (facsimile)

**Attorneys for Appellee
Superior HealthPlan, Inc.**

## CERTIFICATE OF CONFERENCE

Under Texas Rule of Appellate Procedure 10.1(a)(5), I certify that counsel for Appellee Superior HealthPlan, Inc. conferred with all counsel via email regarding the relief sought in this motion. Counsel for Appellant Cecile E. Young, in her official capacity as Executive Commissioner of Texas Health & Human Services Commission, stated that the Executive Commissioner is opposed to this motion. Counsel for Aetna Better Health of Texas, Inc. stated that Aetna is opposed to the motion. Counsel for Molina Healthcare of Texas, Inc. stated that Molina is opposed to this motion, but does not intend to file a response.

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

## CERTIFICATE OF COMPLIANCE

I certify that this Motion contains 6,891 words, excluding the portions of the Motion exempted by Rule 9.4(i)(1).

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

Ex.
A

CAUSE NO. D-1-GN-24-003839

| | | |
|---|---|---|
| COOK CHILDREN'S HEALTH PLAN; TEXAS CHILDREN'S HEALTH PLAN; SUPERIOR HEALTHPLAN, INC.; and WELLPOINT INSURANCE COMPANY, | § § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | TRAVIS COUNTY, TEXAS |
| CECILE ERWIN YOUNG, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission, | § § § § § § | |
| Defendant. | § § | 353rd JUDICIAL DISTRICT |

## TEMPORARY INJUNCTION AND ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION

Before the Court are the Applications for Temporary Injunction (the "Applications") filed by Plaintiffs Cook Children's Health Plan ("Cook Children's"), Texas Children's Health Plan ("TCHP"), Superior HealthPlan, Inc. ("Superior"), and Wellpoint Insurance Company ("Wellpoint," and collectively, "Plaintiffs"); and the Plea to the Jurisdiction (the "Plea") filed by Defendant Cecile Erwin Young ("Defendant"), in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"). After considering Plaintiffs' Applications and Defendant's response; Defendant's Plea and Plaintiffs' responses; the pleadings and attached evidence in these consolidated cases (Nos. D-1-GN-24-003839, D-1-GN-24-003874, D-1-GN-004059, and D-1-GN-24-004327); the parties' prehearing briefing; the evidence admitted in the record and adduced at the hearing held on September 30, October 1, October 2, and October 4, 2024; applicable authorities; the arguments of counsel, and all other matters properly before the Court, the Court DENIES Defendant's Plea and GRANTS Plaintiffs' Applications.

4698-7251.2

Page 5875

The Court makes the following findings:

1.     The Court has subject-matter jurisdiction over the claims in these consolidated cases because Plaintiffs have alleged and offered evidence demonstrating that Defendant will act *ultra vires* in awarding, executing, and implementing the contracts arising out of Request for Proposals No. HHS0011152 (the "RFP" or "STAR & CHIP RFP") because she has acted *ultra vires* in administering the RFP. Plaintiffs properly seek only prospective relief—specifically, injunctive relief prohibiting Defendant from awarding, executing, or otherwise implementing the intended RFP contracts and thus preventing further unlawful acts in connection with Defendant's procurement or contracting processes, as well as accompanying declaratory relief. Accordingly, sovereign immunity does not bar Plaintiffs' claims or deprive the Court of subject-matter jurisdiction.

2.     The Court has personal jurisdiction over the parties in these consolidated cases.

3.     Venue is proper in this Court.

4.     Through the RFP, Defendant sought to procure managed care services for the State of Texas Access Reform ("STAR") Medicaid program and the Children's Health Insurance Program ("CHIP," and together with STAR, "STAR & CHIP").

5.     Plaintiffs allege that Defendant administered the RFP in a manner that violates Texas law and that, consequently, any award, execution, or implementation of the intended STAR & CHIP managed care contracts that Defendant announced on March 7, 2024, will constitute *ultra vires* acts.

6.     Plaintiffs have established a cause of action against Defendant and a probable right to the relief sought on their claims that Defendant has violated and, unless enjoined, will continue to violate statutory and regulatory requirements applicable to the RFP.

7. Specifically, Plaintiffs have established that Defendant has violated and will continue to violate the Texas Government Code, Texas Health and Safety Code, and Texas Administrative Code in procuring managed care contracts for STAR & CHIP in Texas, and that any award, execution, or implementation of Defendant's intended contract awards would be unlawful, because:

- Defendant's intended contract awards will fail to give preference to managed care organizations ("MCOs") that have significant participation in their provider networks from each healthcare provider in the region who has traditionally provided care to Medicaid and charity care patients as required by Texas Government Code § 533.003(a)(1);

- Defendant's intended contract awards will fail to give preference to MCOs that have successfully implemented quality initiatives as required by Texas Government Code § 536.052(a) and (d);

- Defendant has failed to develop and implement the cost-efficiency and quality of care benchmarks mandated by Texas Government Code § 536.052(b) despite being subject to an obligation to do so for over a decade. Defendant's intended contract awards will likewise fail to give preference to MCOs that have met such benchmarks as required by Texas Government Code § 536.052(d);

- Defendant's intended contract awards will fail to consider MCOs' past performances as required by Texas Government Code § 2155.144;

- Defendant's intended contract awards will fail to evaluate and certify that MCOs are reasonably able to fulfill the terms of the STAR contract as required by Texas Government Code § 533.0035 and to review MCOs to confirm their ability to fulfill the requirements of the CHIP contract as required by Texas Health & Safety Code § 62.051(e);

- In August 2023 and again in October 2023, Defendant wrongfully disclosed the RFP proposals of Plaintiffs and other respondents—with the August disclosure recipients including legal counsel for Aetna, one of the competing respondents, while the procurement was ongoing and prior to completion of the oral presentations—thus, destroying any integrity of the procurement process and creating an unlevel playing field that cannot ensure fair consideration of all proposals and is far from consistent, uniform, and transparent as required by 1 Texas Administrative Code §§ 391.101 and 391.209;

- Defendant's intended contract awards will fail to implement the Medicaid managed care program in a manner that improves the health of Texans by promoting

continuity of care and provides a medical home for recipients as required by Texas Government Code § 533.002;

- Defendant's intended contract awards will fail to reduce administrative and other nonfinancial barriers for recipients as required by Texas Government Code § 533.002;

- Defendant's intended contract awards will fail to consider the need to use different managed care plans to meet the needs of different populations as required by Texas Government Code § 533.003(a)(3);

- Defendant's intended contract awards will unlawfully award mandatory CHIP contracts to MCOs to which Defendant intends to award mandatory STAR contracts in violation of Texas Health and Safety Code §§ 62.055 and 62.155;

- Defendant's intended award of mandatory CHIP contracts will fail to give consideration to statutorily required factors, including those under Texas Government Code § 533.003, in violation of Texas Government Code § 533.004(a);

- Defendant's continuing practice of denying relevant information about a procurement to bidders until after the deadline to submit a bid protest violates the Due Course of Law provision of Article I, Section 13 of the Texas Constitution by not providing a meaningful bid protest process after promising one in 1 Texas Administrative Code Chapter 391; and

- Defendant's continuing practice of refusing to consider as untimely any information submitted in supplemental protests and/or after the protest filing deadline is inconsistent with the procedural protections promised to protestants in bid protest rules that require consideration of a protest or appeal submitted after the filing deadline when good cause for delay is shown under 1 Texas Administrative Code § 391.307(d)(1).

8. These statutory and regulatory violations, each singly and together collectively, have resulted in intended contract awards that will be invalid and unlawful, and the further execution and implementation of such intended contract awards will be *ultra vires* acts.

9. Furthermore, Defendant is currently evaluating bids for STAR Kids, a separate Texas Medicaid managed care program, through Request for Proposals No. HHS0013071 (the STAR Kids RFP"). The procurement processes in the STAR & CHIP RFP and the STAR Kids RFP are substantively identical. Plaintiffs have demonstrated that Defendant has no intention of

voluntarily correcting her course of action for future procurements, including altering the processes and procedures used in administering the STAR Kids RFP. The resulting STAR Kids contract awards will therefore also violate statutory and regulatory requirements and be *ultra vires*.

10.     Plaintiffs have established a probable right to relief and that Defendant's award, execution, and implementation of the intended, unlawfully procured STAR & CHIP contracts will, if not enjoined, cause Plaintiffs to suffer imminent and irreparable injury.

11.     Cook Children's has established that execution and implementation of the contracts would result in irreparable harm to Cook Children's because:

- The loss of STAR & CHIP contracts threatens Cook Children's financial viability and might lead to the forced wind-down of the entity;

- Cook Children's participation in the STAR Kids program is in jeopardy because the larger STAR & CHIP contracts provide economies of scale to limit losses from STAR Kids;

- Cook Children's 100,000-plus STAR & CHIP members will be forced to change to different health plans from different companies, risking disruption to the members' healthcare and their access to their current primary care providers, specialty care providers, or both;

- Cook Children's has suffered immediate operational disruptions, including hiring difficulties and the delay of needed internal projects;

- Cook Children's can no longer negotiate a new pharmacy benefits contract alongside other Texas-only Medicaid plans and consequently will need to pay more for pharmaceuticals;

- Cook Children's 375 employees are at risk of losing their jobs—both the 70% of employees who focus on STAR & CHIP and the 30% who focus on STAR Kids; and

- New STAR & CHIP entrants in the Tarrant Service Area will likely poach Cook Children's experienced employees before the new contracts go into effect—thus threatening Cook Children's STAR & CHIP operations while it is still required to provide services under its current contracts.

12.     TCHP has established that execution and implementation of the contracts would result in irreparable harm to TCHP because:

- TCHP's 425,000 STAR & CHIP members will be forced to change their health plans, impacting their access to care;

- TCHP has suffered and will continue to suffer disruptions in workforce— threatening the future viability of the health plan—as employees voice concern about job security in light of the intended contract awards;

- TCHP's 650 employees are at risk of losing their jobs, impacting the financial health of its entire Texas Children's Health Care System beyond that of the health plan;

- TCHP has already suffered and will continue to suffer the poaching of its well-trained employees by other MCOs—further endangering its operations while it remains under contract with HHSC;

- TCHP will lose members and providers, further threatening the viability of the health plan and confusing members and providers;

- TCHP has and will suffer damage to its reputation and goodwill; and

- TCHP's participation in the STAR Kids program is at risk because the larger STAR & CHIP contracts are needed to provide economies of scale to limit losses from STAR Kids. If TCHP loses its STAR Kids contract, its 26,000 STAR Kids members would need to change their health plans, thereby adversely impacting those members' access to care, adversely impacting TCHP's workforce, adversely impacting TCHP's ability to operate and damaging TCHP's reputation and goodwill.

13. Superior has established that execution and implementation of the contracts would result in irreparable harm to Superior because:

- Superior will experience a reduction in the number of STAR & CHIP members it serves today, forcing members to change plans even before the operational start date of the new contracts;

- Superior will need to begin reducing its workforce just as new MCO entrants and MCOs expanding their membership will seek to poach Superior's employees, who are already grappling with the uncertainty of their jobs in light of the intended awards;

- Providers will be less likely to contract with Superior as contract renewals are being negotiated over the next few months and Superior's leverage in provider contract negotiations will be substantially diminished;

Superior has made substantial investments in partnerships that promote HHSC's value-based care priorities. These partnerships involve risk-sharing agreements



between Superior and the partner entities and have been built to scale over time. Superior will lose the benefit of its initial investments in these partnerships; and

- Superior's ability to provide the same level of service currently provided under existing STAR & CHIP contracts through the August 31, 2025, expiration date will be diminished due to workforce challenges that would be caused by execution of the STAR & CHIP contracts, which will impact Superior's operations and cause it to suffer reputational damage.

14. Wellpoint has established that execution and implementation of the contracts would result in irreparable harm to Wellpoint because:

- Almost 380,000 current Wellpoint members will be forced to change their health plan, thus losing access to their existing Wellpoint provider network;

- Wellpoint will be forced to consider substantial reductions in and/or relocations of its existing 1,200-plus-person workforce dedicated to the Texas Medicaid programs;

- Wellpoint has already suffered and will continue to suffer the poaching of its highly trained employees by other MCOs. During the review and transition period, which HHSC has stated will take at least a full year, Wellpoint must continue to provide uninterrupted healthcare to its members, and its ability to do so will be substantially jeopardized if there are key staff vacancies;

- Wellpoint has already suffered and will continue to suffer difficulty retaining its existing, robust provider network in the impacted service areas. Maintaining its network of healthcare providers is critical to Wellpoint's commitment to providing high-quality, cost-efficient healthcare for the entire duration of its existing contracts. Worse yet, Wellpoint has learned that some providers are informing members that Wellpoint will no longer be providing STAR & CHIP services in impacted areas and are encouraging them to switch plans on the basis of Defendant's intended contract awards;

- Wellpoint has made significant investments in service areas that it will be forced to exit and has longstanding provider partnerships with alternative payment models that were developed and built to scale over multiple years. Wellpoint will lose the benefit of its investments in those service areas and partnerships.

- There is no legal remedy that can fully compensate Wellpoint for (1) the loss of its members, (2) the harm to its business resulting from the intended, unlawfully procured contract awards, and (3) the harm to its ability to compete in a fair and lawful procurement process in future procurements; and

- The harm to Wellpoint is imminent because Defendant did not follow the requirements of Texas law in procuring the STAR & CHIP contracts but



nevertheless intends to execute and begin implementing the intended, unlawfully procured contract awards. In addition, the harm to Wellpoint is imminent as Defendant does not intend to correct her unlawful course of action for future procurements or the ongoing STAR Kids RFP.

15. Plaintiffs have also presented evidence that they will begin losing STAR & CHIP members now, even though operations under the intended STAR & CHIP contract awards are not scheduled to start until September 1, 2025. Providers are already informing Plaintiffs' members that Plaintiffs will no longer be providing STAR & CHIP services in certain service areas of the state and are encouraging members to switch plans. The confusion among providers and members alike will only worsen if the intended contract awards are executed notwithstanding the pending challenge to their legality.

16. Money damages are not adequate compensation because the harms Plaintiffs will suffer cannot be measured by any certain pecuniary standard. Furthermore, Plaintiffs cannot be adequately compensated in damages because Defendant is immune from suit for damages and any limited waiver of immunity is insufficient to compensate for Plaintiffs' harms.

17. The harms to Plaintiffs outweigh any potential harms to Defendant or HHSC that would result from preserving the status quo during the pendency of these consolidated cases. Neither Defendant nor HHSC would be harmed if the execution and further implementation of the intended STAR & CHIP contracts are delayed given that (1) operations under the intended contract awards are not scheduled to start until September 1, 2025, and (2) HHSC has previously delayed the RFP several times and was able to continue providing coverage through the current STAR & CHIP contracts by extending the contracts in effect at the time.

18. The public will not suffer harm if a temporary injunction is granted but will suffer harm if Defendant executes and implements the intended, unlawfully procured contract awards. The intended contract awards will impose significant harm and confusion on millions of Texas's

STAR & CHIP members. More than 1.5 million Texans, mostly children—and 43% of the total STAR & CHIP population—will be forced to change health plans. This in turn would cause significant harms to those beneficiaries, for which there is no adequate remedy at law available against Defendant, including:

- Confusion among those beneficiaries due to difficulties in informing them of the change in available health plans;

- Disruption to those beneficiaries' access to care and continuity of care, thereby threatening the medical care and the very health and welfare of those beneficiaries; and

- Administrative burdens of finding new health plans and potentially new healthcare providers.

19.     The injunctive relief Plaintiffs request is narrow in scope and tailored to prohibit Defendant from continuing to act *ultra vires*. The balance of equities and public interest weigh in favor of granting Plaintiffs' requested injunctive relief.

Accordingly, it is therefore ORDERED that Defendant's Plea to the Jurisdiction is DENIED.

It is further ORDERED that Plaintiffs' Applications for Temporary Injunction are GRANTED. The Court ORDERS that:

- Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP RFP or to further the procurement or contracting processes for the STAR & CHIP RFP; and

- Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from further proceeding with the procurement of, issuing a notice of intent to award or awarding contracts under, or otherwise implementing results from the STAR Kids RFP.



IT IS FURTHER ORDERED that Defendant shall provide notice of this Temporary Injunction to her officers, agents, servants, employees, and attorneys, as well as any persons or entities in active concert or participation with Defendant.

IT IS FURTHER ORDERED that Plaintiffs' bond or cash deposit in lieu of bond is set in the amount of $1,000.

IT IS FURTHER ORDERED that, on the filing by Plaintiffs of the bond and on approving the bond according to law (or the cash deposit in lieu of bond), the Clerk shall issue a Temporary Injunction in conformity with the law and the terms of this order.

IT IS FURTHER ORDERED that this Temporary Injunction shall not expire until final judgment in this case is entered or this case is otherwise dismissed by this Court.

IT IS FURTHER ORDERED that the trial on Plaintiffs' *ultra vires* claims seeking declaratory relief, permanent injunctive relief, and mandamus relief is set for November 3, 2025.

SIGNED on October 4, 2024.

_____
JUDGE PRESIDING

**Judge Laurie Eiserloh**
**455th District Court**

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 11/01/2024 09:28:21

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

169317251.2

Ex.
B

The following is an Agreement executed by and among the undersigned parties in connection with the interlocutory appeal filed by Cecile Young, in her official capacity as Executive Commissioner of the Texas Health & Human Services Commission ("Defendant") in the Fifteenth Court of Appeals as Cause No. 15-24-00114-CV (the "Appeal") from Travis County Cause No. D-1-GN-24-003839, consolidated with Travis County Cause Nos. D-1-GN-24-003874, D-1-GN-24-004059, and D-1-GN-24-004327 (the "Consolidated Lawsuit"). This Agreement is effective upon execution by counsel for the following: Defendant; Cook Children's Health Plan; Texas Children's Health Plan; Superior HealthPlan, Inc.; and Wellpoint Insurance Company (collectively, the "Parties").

Through the Appeal, Defendant seeks review of the trial court's October 4, 2024, order denying her Plea to the Jurisdiction and granting Plaintiffs' Motions for a Temporary Injunction (the "Temporary Injunction Order"). Now the Parties agree as follows:

1.  The Parties shall file a Joint Motion to Abate in the Appeal. In it, the Parties will ask the appellate court to abate the Appeal until 30 days after the end of the 89th Regular Session of the Texas Legislature. A copy of this Agreement will be attached as an exhibit to the Joint Motion to Abate.

2.  Notwithstanding any supersedeas rights, Defendant, the Texas Health & Human Services Commission, and all employees and agents of the Texas Health & Human Services Commission (collectively, "HHSC") will comply with the terms of the Temporary Injunction Order until the latest of (a) 30 days after the end of the 89th Regular Session of the Texas Legislature, regardless of the appellate court's ruling on the Joint Motion to Abate; (b) a ruling from the appellate court on any request for temporary orders under TRAP 29.3 filed within seven days of the Appeal's reinstatement; or (c) disposition of any mandamus proceeding in the Texas Supreme Court reviewing a ruling on a request described in (b) above, provided that the proceeding is filed within seven days of such ruling.

3.  HHSC may complete the consensus scoring on the written proposals in RFP No. HHS0013071 (the "STAR Kids RFP"), provided HHSC takes no other action with respect to the STAR Kids RFP.

4.  Should the Consolidated Lawsuit return to the trial court before the end of the 89th Regular Session of the Texas Legislature, the Parties agree to file a Joint Motion to Abate in the Consolidated Lawsuit, asking those proceedings be abated until 30 days after the end of the 89th Regular Session of the Texas Legislature.

5.  Additionally, the Parties agree to file a Joint Motion to Abate in each of the PIA lawsuits filed as Cause Nos. D-1-GN-24-003564, D-1-GN-24-002509, and D-1-GN-24-002569, which the Parties agree shall stay abated until at least thirty days after the end of the 89th Regular Session of the Texas Legislature.

6.  The Parties agree that this Agreement will apply to any successor to Defendant.

7.  In the event that the Appeal is successful and all claims in the Consolidated Lawsuit are dismissed, following exhaustion of all appellate proceedings, then this Agreement shall be deemed terminated and no Party is bound by its terms.

Agreed:

_____
Matthew Gordon, Counsel for Cook Children's Health Plan

_____
Meghan McCaig, Counsel for Superior HealthPlan, Inc.

_____
Paul Trahan, Counsel for Texas Children's Health Plan

_____
Rob Johnson, Counsel for Wellpoint Insurance Company

_____  10/24/2024
Thomas Bevilacqua, Counsel for Cecile E. Young, in her Official Capacity as Executive Commissioner of HHSC

- 2 -

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Phillips on behalf of Richard Phillips Jr.
Bar No. 24032833
Rich.Phillips@hklaw.com
Envelope ID: 102998328
Filing Code Description: Motion
Filing Description: Superior HealthPlan, Inc.'s Motion for Temporary Relief Under Rule 29.3
Status as of 7/10/2025 4:52 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michaelle Peters | | mpeters@scottdoug.com | 7/10/2025 4:41:43 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 7/10/2025 4:41:43 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 7/10/2025 4:41:43 PM | SENT |
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 7/10/2025 4:41:43 PM | SENT |
| Robert Johnson | 10786400 | rjohnson@foley.com | 7/10/2025 4:41:43 PM | SENT |
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 7/10/2025 4:41:43 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 7/10/2025 4:41:43 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 7/10/2025 4:41:43 PM | SENT |
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 7/10/2025 4:41:43 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 7/10/2025 4:41:43 PM | SENT |
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 7/10/2025 4:41:43 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 7/10/2025 4:41:43 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 7/10/2025 4:41:43 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 7/10/2025 4:41:43 PM | SENT |
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 7/10/2025 4:41:43 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 7/10/2025 4:41:43 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 7/10/2025 4:41:43 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 7/10/2025 4:41:43 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 7/10/2025 4:41:43 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 7/10/2025 4:41:43 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 7/10/2025 4:41:43 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 7/10/2025 4:41:43 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Phillips on behalf of Richard Phillips Jr.
Bar No. 24032833
Rich.Phillips@hklaw.com
Envelope ID: 102998328
Filing Code Description: Motion
Filing Description: Superior HealthPlan, Inc.'s Motion for Temporary Relief Under Rule 29.3
Status as of 7/10/2025 4:52 PM CST

Case Contacts

| Kristin Hernandez | | kristin.hernandez@foley.com | 7/10/2025 4:41:43 PM | SENT |
|---|---|---|---|---|
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 7/10/2025 4:41:43 PM | SENT |
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 7/10/2025 4:41:43 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 7/10/2025 4:41:43 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 7/10/2025 4:41:43 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 7/10/2025 4:41:43 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 7/10/2025 4:41:43 PM | SENT |
| David Johns | | david@cobbjohns.com | 7/10/2025 4:41:43 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 7/10/2025 4:41:43 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 7/10/2025 4:41:43 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 7/10/2025 4:41:43 PM | ERROR |
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 7/10/2025 4:41:43 PM | SENT |
| Trisha Marino | | tmarino@perkinscoie.com | 7/10/2025 4:41:43 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 7/10/2025 4:41:43 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 7/10/2025 4:41:43 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 7/10/2025 4:41:43 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 7/10/2025 4:41:43 PM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 7/10/2025 4:41:43 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 7/10/2025 4:41:43 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 7/10/2025 4:41:43 PM | SENT |